**IN THE UNITED STATES COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01664-STV

TANNER SHOLES,

    Plaintiff,

v.

THE CITY OF CRAIG COLORADO, a municipality;
KC HUME, in his official capacity as MOFFAT COUNTY SHERIFF;
CHIP MCINTYRE, an individual;
KURTIS LUSTER, an individual;
NATE BUSINGER, an individual;
BRANDON MONTOYA, an individual;
MATT HAMMER, an individual;
DALTON CAUDELL, an individual;
TRACEY MENDOZA, an individual;

    Defendants.

---

**MOFFAT COUNTY DEFENDANTS' MOTION TO DISMISS**

---

Defendants Moffat County Sheriff KC Hume, in his official capacity, Chip McIntyre, Nate Businger, Kurtis Luster, Brandon Montoya, and Matt Hammer (collectively the "Moffat County Defendants"), by and through their attorneys, Bruno, Colin Goddard and Lowe P.C., hereby moves this Court for an Order dismissing Plaintiff's Third Amended Complaint ("TAC") [ECF No. 32] pursuant to Fed. R. Civ. P. 12(b)(6), and in support thereof states as follows:

**CERTIFICATE OF COMPLIANCE**

Pursuant to D.C.COLO.MJ (V)(9) and D.C. COLO. L Civ R. 7.1(a) counsel for the Moffat County Defendants conferred with counsel for Plaintiff extensively prior to the filing of Plaintiff's

1

TAC [ECF No. 32] and again prior to filing of this Fed. R. Civ. P. 12 motion. Counsel for Plaintiff has indicated that Defendants' motion is opposed.

## INTRODUCTION

This case arises out of a use-of-force incident involving a non-compliant suspect who was thought to possess a firearm. On September 22, 2023, officers received a report of an individual, later identified as Plaintiff Sholes, walking though the City of Craig carrying an assault rifle and duffle bag. Officers began surveilling Plaintiff and confirmed his identity. Plaintiff is well known to law enforcement due to his extensive criminal history and the fact he has, on numerous occasions, become violent, resisted arrest, and threatened suicide-by cop. The Moffat County Special Response Team (SRT) was activated, and additional officers/deputies from the Craig Police Department (CPD) and the Moffat County Sheriff's Office (MCSO) responded. Plaintiff was observed for several hours as he walked out of the city limits and North along Highway 13. Plaintiff then turned onto a county road which ended at a private residence. Two MCSO vehicles approached Plaintiff from behind and began issuing loud commands for him to drop his weapon. Plaintiff refused these commands and kept walking, with his back toward them and the rifle still slung over his shoulder. Given concerns for officer and public safety and his failure to comply with lawful orders, Lieutenant Nate Businger of the MCSO used his vehicle to knock Plaintiff to the ground where he was then arrested without incident. The assault rifle was inspected and discovered to be a BB gun.

Plaintiff filed his TAC alleging federal and state excessive force claims against the Moffat County Defendants, as well as a *Monell* claim for municipal liability against the MCSO. As articulated below, Plaintiff's TAC fails to sate any valid claims and should be dismissed with prejudice.

## ALLEGED FACTS[1]

On the morning of September 22, 2023, Craig Police Department received two separate 911 calls reporting a male walking through the city carrying a riffle. ECF No. 32 ¶¶ 18-19. Craig PD Officer, Defendant Mendoza, responded and located the male in question whom Mendoza identified as Plaintiff based on prior police contacts. *Id.* at p.3; ¶ 21. Officer Mendoza observed the barrel of a riffle poking out from beneath Plaintiff's outer shirt. *Id.* at ¶ 21. The Special Response Team (SRT) consisting of members of the CPD and MCSO was activated and responded to an area on Highway 13 near Plaintiff's location. *Id.* at p. 4; ¶ 53. Over the course of the next hour, officers from both CPD and the MCSO continued to surveil Plaintiff as he travelled north through Craig and eventually into Moffat County. *Id.* at ¶ 22. While officers continued to observe Plaintiff, Officer Mendoza contacted Plaintiff's former girlfriend and another officer contacted Plaintiff's mother. *Id.* at ¶¶ 23-24. Both denied knowing of Plaintiff's whereabouts or where he could have obtained a riffle. *Id.* Officers learned that Plaintiff had previously made comments regarding attempting suicide by cop. *Id.* at ¶ 59. Officers were also informed by dispatch that Plaintiff was restrained from possessing a weapon by three separate restraining orders. *Id.* at ¶ 25 Plaintiff eventually left the city limits and entered Moffat County, travelling north along Highway 13. *Id.* While watching Plaintiff, officers observed him obstruct traffic several times along Highway 13. *Id.* at ¶¶ 25-26. Based on this conduct, Defendant McIntyre decided to close Highway 13 to the public. *Id.* at ¶ 28. Plaintiff then turned off Highway 13 onto an adjacent county road that after a short distance dead ended at a private residence not known to be associated with Plaintiff. *Id.* at p. 5; ¶¶ 29. 47 & 49. Defendant McIntyre instructed members of the SRT Team, to include

---

[1] Defendants, like the Court, assume these facts are true for the purposes of this Motion only. Defendants deny they violated Plaintiff's rights.

the individually named Defendants, to gather into two vehicles, one driven by McIntyre and the other by Lt. Businger. *Id.* at ¶ 55. Defendants began to follow Plaintiff down the County Road, issuing repeated commands identifying themselves as law enforcement and ordering Plaintiff to drop the gun and get on the ground. *Id.* at ¶¶ 80-82. Plaintiff did not comply with these repeated orders and continued to walk toward the private residence at the end of the road. *Id.* at ¶ 83. Lt. Businger then accelerated towards Plaintiff between 20 mph and 30 mph, contacting Plaintiff, knocking him to the ground where other Defendant officers were able to restrain him and take him into custody. *Id.* at ¶¶84, 86, 88 & 89. Officer seized and inspected the riffle which turned out to be a BB gun. *Id.* at ¶91.

## STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), Plaintiff's complaint must contain sufficient factual allegations "to state a claim to relief" against each named Defendant "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While presuming <u>well-pled</u> factual allegations are true and drawing all reasonable inferences therefrom, *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991), a Court first identifies and dismisses allegations that are legal conclusions, bare assertions, or merely conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citation omitted). Any remaining factual allegations are then analyzed "to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 678. If a complaint does not include "enough factual matter (taken as true) to … nudge [their] claims across the line from conceivable to plausible," it "must be dismissed." *Twombly*, 550 U.S. at 570.

In turn, Fed. R. Civ. P. 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 662. "[L]abels and conclusions or a

4

formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Where, as here, "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citations omitted).

Defendants McIntyre, Businger, Luster, Montoya and Hammer are also entitled to qualified immunity, the elements of which are well known. Qualified immunity protects a defendant from discovery, trial, and the other burdens of litigation, and can be asserted, as here, when the plaintiff has failed to plead facts or allegations that establish a violation of clearly established law. *Sawyer v. County of Creek*, 908 F.2d 663, 665 (10th Cir. 1990). Qualified immunity puts "the onus … on the [P]laintiff to demonstrate (1) that [the Individual Defendant] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the[ir] challenged conduct." *Cummings v. Dean,* 913 F.3d 1227, 1239 (10th Cir. 2019) (cleaned up). The first prong is assessed by whether a constitutional or federal statutory violation has been sufficiently pled. *Matthews v. Bergdorf,* 889 F.3d 1136, 1144 n.2 (10th Cir 2018). The second prong is assessed by determining, as pled, "whether it would be clear to a reasonable officer that [the defendant's] conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

## ARGUMENT

### I.     Plaintiff fails to state a constitutional violation of clearly established law.

The individual Moffat County Defendants assert qualified immunity to Plaintiff's § 1983 Fourth Amendment excessive force claim. In the face of that assertion, Plaintiff must demonstrate that the individual Defendants violated a clearly established statutory or constitutional right. *Cummings*, 913 F.3d at 1239.

5

**A. No underlying constitutional violation.**

In the face of an excessive force claim during a seizure, the Court applies the Fourth Amendment objective reasonableness standard. *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022). To determine whether the use of force was reasonable, the Court considers the totality of the circumstances from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Estate of Larsen v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008). Courts generally apply three factors to determine whether a use of force is reasonable: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officer or others," and (3) "whether the individual is actively resisting arrest or attempting to evade arrest by flight." *Arnold*, 35 F.4th at 788 (quoting *Graham v. Connor*, 490 U.S. at 386, 396-97 (1989). Plaintiff avers that the decision to use force was based on, among other things, Plaintiff's "criminal history, including previous incidents where he resisted arrest and/or bore other weapons," and Plaintiff's "failure to comply with McIntyre's commands." ECF No. 32 ¶57. Against this backdrop, the plan to take Plaintiff into custody was objectively reasonable.

1. *Severity of the crime at issue.*

At the time of the incident, Plaintiff was restrained by three restraining orders from possessing a firearm. ECF No. 32, ¶25. In conceding this fact, Plaintiff asserts that the most sever allegation against him at the time of the use of force was a "nonviolent misdemeanor-level" offense. *Id.* at ¶ 62. This is incorrect due to Plaintiff's status as a convicted felon, which made his possession of a firearm on September 22, 2023 a felony. *See* § 18-12-108(2) C.R.S. (2023);

**Exhibit A**.² When the crime at issue is a felony, the first *Graham* factor weighs in favor of the Defendant Deputies. *Vette v. Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021).

   2. *Plaintiff posed a credible threat.*

The second *Graham* factor, which courts have deemed the most important factor, evaluates whether the Plaintiff posed an immediate threat to the safety of the officers or others. *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir.2017). To the extent this court views the vehicle strike as deadly force, "the use of deadly force is only justified if the officer had probable cause to believe that there was a threat of serious physical harm to [himself] or others." *Estate of George v. City of Riffle*, 85 F.4th 1300, 1317-18 (10th Cir. 2023) (quoting *Larsen*, 511 F.3d at 1260)). To determine whether an officer had probable cause to believe there was an immediate threat to himself or others, the court must consider the four, non-exclusive, *Larsen* factors. Id. at 1317 (quotation marks omitted) (citing *Palacios v. Fortuna*, 61 F.4th 1248, 1258 (10th Cir. 2023)). The four *Larsen* factors include: "(1) whether the suspect was given orders and the suspect's compliance with the orders; (2) whether any hostile motions were made toward the officers; (3) the physical distance between the officers and the suspect; and (4) the manifest intentions of the suspect." *Id*.

Here, the first factor weighs in favor of Defendants as Plaintiff was given repeated commands to drop the riffle and get on the ground to which he refused to comply continuing to advance on the private residence at the end of the road. The fact that "a suspect was given orders and did not comply, weighs in the officers' favor." *Palacios*, 61 F.4th at 1259. Plaintiff does not

---

² This Court may consider documents referenced in a complaint, such as Plaintiff's criminal history, without converting a motion to dismiss to a motion for summary judgment. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Additionally, Plaintiff's criminal history is a public record the Court may take judicial notice of without converting a motion to dismiss to a summary judgment motion. See *McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

aver any facts that he made any "hostile motions" thus, this second factor favors Plaintiff. The third factor, physical distance, favors Defendants. Unlike *Larsen*, where the suspect possessed a knife, Plaintiff here was believed to be in possession of a long gun, which presents a threat at greater distances than a knife. The circumstances here are very similar to those analyzed by the Tenth Circuit in *Estate of George*. There, like the facts here, the suspect was armed with a firearm, fleeing from officers giving him commands to drop the gun and surrender in a direction toward members of the general public and an area that provided the suspect access to a location that could have provided cover from officers. *Estate of George*, 85 F.4th at 1318. Because Plaintiff here was believed to be armed, non-compliant, traveling toward a private residence a short distance away which provided him potential access to uninvolved citizens and cover from officers, this factor, like in the *Estate of George*, weighs in favor of Defendants here.

The fourth *Larsen* factor, manifest intentions of the suspect also weigh in favor of the Defendants. Again, *Estate of George* is instructive. Like the suspect in *Estate of George*, Plaintiff here was aware he was being pursued by law enforcement, refused to comply with orders to disarm and surrender while walking toward a location likely to contain innocent citizens. Additionally, the court in *Estate of George* considered other evidence to evaluate the manifest intentions of the suspect, namely the suspect's decision to retain possession of the gun and his continued flight toward a populated area which made it reasonable for the officer to interpret that act as an intention to use the gun, presenting a significant, imminent risk of serious injury or death to themselves or uninvolved citizens. *Id.* at 1319. Applying that same analysis to Plaintiff's conduct here, coupled with the information from Plaintiff's ex-girlfriend that he might attempt suicide by cop, the fourth *Larsen* factor weigh in favor of Defendants. With three of the four *Larsen* factors favoring the Defendants, the second, and most important *Graham* factor also favors the Defendants.

8

    3. *Plaintiff resisted and attempted to evade arrest.*

The facts alleged in the TAC are undisputed that Defendants identified themselves as law enforcement, gave Plaintiff repeated commands to drop his weapon and get on the ground to which the Plaintiff ignored while continuing to flee toward a private residence. "[Courts] have found this third factor to weigh in favor of some degree of physical coercion or threat[ ] when an individual refuses to obey an officer's lawful orders." *Andersen v. DelCore*, 79 F.4th 1153, 1165 (10th Cir. 2023) (cleaned up, internal citation omitted). This is because "[o]fficers must be able to employ force to enforce their lawful orders. Otherwise, an officer's power to give lawful orders would be hollow." *Id.* at 1166 (internal quotations omitted). On these facts, this factor also favors Defendants. With all three *Graham* factors favoring the Defendants, Plaintiff cannot establish that the force used here was objectively unreasonable and thus is unable to plead a plausible constitutional violation. Plaintiff's excessive force claims must be dismissed.

**B**. **No violation of clearly established law.**

A law is clearly established "if a plaintiff (1) identif[ies] an on-point Supreme Court or published Tenth Circuit decision . . . or (2) shows the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Flores v. Henderson*, 101 F.4th 1185, 1199 (10th Cir. 2024) (quoting *Perry v. Durborow*, 892 F.3d 1116, 1122-23 (10th Cir. 2018)). The Supreme Court has admonished that clearly established law must not be defined by courts at too high a level of generality. *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). In other words, a clearly established right must be particularized to the facts of the case. *White v. Pauly*, 580 U.S. 73, 79 (2017).

Here, the TAC alleges that two cases, *Arnold v. City of Olathe*, 35 F.4th 778, (10th Cir. 2022) and *Womack v. Rodriguez*, No. 2:20-cv-026638-HT, 2023 U.S. Dist. LEXIS 25958 (D. Kan.

9

Feb. 15, 2023) clearly established that the conduct here was objectively unreasonable. Plaintiff is incorrect. As a threshold matter, *Womack* is a district court case and a district court case is not binding authority and cannot serve to clearly establish the law. *Camerta v. Greene*, 563 U.S. 692, 709 n.7 (2011). Next, both *Arnold* and *Womack* are too factually distinct to clearly establish the law in this area. The court in *Arnold*, in finding the officers' use of deadly force was reasonable, answered whether the officers there recklessly created the need to use force, an issue not plead or raised in the TAC here. *Arnold*, 35 F.4th at 791. In *Womack*, the facts are closer in line with those here with one glaring exception, the suspect *Womack* and the out of circuit cases (*Gaillard*, *Clark*, *Robinson* and *Martin*) cited therein, was known to be unarmed at the time force was applied. Thus, neither *Womack*, nor the out of circuit cases cited therein can serve to clearly establish the law here.

Finally, although not plead in this manner, given the undisputed factual averments contained in the TAC, Defendant's Luster, Montoya, Hammer and McIntyre did not apply force to Plaintiff, thus, to the extent that Plaintiff's excessive force claims can be read as a failure to intervene in excessive force, these claims also fail based on Plaintiff's inability to plead a plausible constitutional violation of clearly established law. In order to maintain a failure to intervene claim a Plaintiff must allege that (1) a government officer violated his constitutional rights, (2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and (3) the defendant had a realistic opportunity to intervene but failed to do so. *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022). For the reasons stated above, Plaintiff here is unable to do so and his excessive force claims premised on a failure to intervene theory must also be dismissed. *See Flores*, 101 F.4th at 1199 (For there to be a failure to intervene, it logically follows that there must exist an underlying clearly established constitutional violation.)

10

**II.     Plaintiff has failed to state a valid *Monel* claim against the MCSO.**

Plaintiff brings suit against Sheriff KC Hume in his official capacity as the Moffat County Sheriff, which is the same as bringing an action against the government entity that employs him, in this case, the MCSO. *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). A municipal entity can only be liable under § 1983 for their own unlawful acts and are not vicariously liable for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted). To establish a constitutional violation under § 1983 against a municipal entity like the MCSO, Plaintiff must present "facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs.*, 973 F.3d 1022, 1034 (10th Cir. 2020) (citing *Monell v. Dept. of Soc. Sers.*, 436 U.S. 658 (1978)).

An official policy or custom can be shown by "a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017).

Causation typically requires a showing of a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013). The mere probability of a constitutional injury is insufficient, the policy or custom must have made it "highly likely" that "this officer" would

11

"inflict the *particular* injury suffered by the plaintiff." *Bd. of Cnty Com'rs v. Brown*, 520 U.S. 397, 412 (1997) (emphasis in original).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Brown*, 520 U.S. at 410). Deliberate indifference typically requires a showing that "the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsiper*, 143 F. 3d 1299, 1307 (10th Cir. 1998). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id.*

### A. Failure to Train, supervise and discipline theory.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S.Ct. at 1359. Thus, a municipality's failure to train its employees risks § 1983 liability only where that failure amounts to deliberate indifference to the rights of citizens. *Canton*, 489 U.S. at 388-89. A less stringent standard of fault for a failure-to-train claim "would result in de facto *respondeat superior* liability." *Id.* at 392. Allegations of failure to supervise are assessed under the same standard. *Whitewater v. Goss*, 192 Fed.Appx. 794, 797 (10th Cir. 2006). Additionally, "[r]arely, if ever, is 'the failure of a police department to discipline in a specific instance … an adequate basis for municipal liability under *Monell*.'" *Schneider*, 717 F.3d at 777 (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1056 (10th Cir. 1993)). This case is no different. In turn, deliberate indifference involves an obvious need for more or different training where the inadequacy of training is likely to result in the violation of constitutional rights. *Canton*, 489 U.S. at 390. "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program causing

12

constitutional violations." *Connick*, 131 S. Ct. at 1360. Additionally, the identified deficiency must be closely related to a plaintiff's particular injury. *Canton*, 489 U.S. at 385, 390-91.

Here, the TAC makes only conclusory allegations regarding the alleged failure to train. No mention is made of any specific deficiency in MCSO's "overall training," but rather only conclusory allegations that at best may suggest "shortcomings in individual officers' training and supervision." *Murphy v. City of Tulsa*, 950 F.3d 641, 652 (10th Cir. 2019). Additionally, Plaintiff has alleged no facts to suggest that MCSO was on notice of any such alleged failures as Plaintiff fails to sufficiently allege a prior pattern of similar violations. Neither does Plaintiff articulate any "specific facts regarding the officers' training or supervision—for instance, 'how the individual defendants were trained, who they were trained by, why their training was deficient, or what the City's training includes and how it has changed since the alleged pattern began.'" *Thomas v. City of Aurora*, 2021 WL 5810742 at *19 (D. Colo. 2021) (quoting *Cook v. Whyde*, 2021 WL 4459051 at *16 (D. Colo. 2021)). Plaintiff includes no factual allegations to support that MCSO was on notice of any alleged training deficiencies and failed to act upon this notice. Thus, there is no basis upon which to conclude that MCSO acted with deliberate indifference.

### B. Failure to adequately investigate and hire theory.

Plaintiff appears to assert a deficient hiring and screening process in support of his *Monell* claim against the MCSO. ECF No. 32, ¶147. However, the TAC is devoid of any factual allegations relating to the MCSO's hiring practices, nor does it contain any facts describing how MCSO's supervision of its deputies was inadequate or how this allegedly inadequate hiring or supervision caused Mr. Sholes injury. Plaintiff benignly states "[r]egarding hiring, investigation and discipline, the Sheriff controls his own operations," *Id.*, ¶ 121, and then nakedly asserts, "[t]he Sheriff failed to hire officers, and specifically the named Defendants, in a manner that would not lead to the

13

deprivation of the Plaintiff's constitutional rights." ECF No. 32, ¶ 147. However, Plaintiff does not develop any factual averments to support this bare assertion. Accordingly, Plaintiff has failed to "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and these naked assertions, without further factual development, are fatal to Plaintiff's claim. *Iqbal*, 556 U.S. at 662.

### C. Ratification theory.

To the extent Plaintiff's TAC can be read to assert a *Monell* claim under a ratification theory, this claim also fails. The TAC alleges that "[t]hese encouragements, toleration of, and ratifications demonstrate that such police misconduct is carried out pursuant to policies of and regimen of training provided by the Sheriff and … that such conduct is customary within MCSO…" ECF. No. 32 ¶ 123.

Municipal liability may be based on the ratification by "final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Sanchez v. Melendrez*, 934 F. Supp. 2d 1325, 1339-40 (D.N.M. 2013). A final policymaker is someone "whose acts or edicts may fairly be said to represent official policy." *Id.* (citing *Monell*, 436 U.S. at 694). Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. *St. Luis v. Praprotnik*, 485 U.S. 112, 130 (1988). Rather, a Plaintiff must demonstrate that the act of a subordinates was expressly approved by the supervising policy maker or that the supervising policymaker, through a series of decision made by a subordinate which manifested in a custom or usage, must have been aware of and deemed to have adopted. *Id.*

Here, Plaintiff avers no facts that the Defendants' decision was expressly approved by the Sheriff, instead the TAC states in conclusory fashion and without developing any further factual

14

support that because of the involvement of the Undersheriff, the second highest ranking law enforcement ranking official in the county, the Sheriff "knew or should have known" of the obvious risks of harm faced by members of the public when contacted by MCSO and "knew or had constructive knowledge" that his deputies used excessive and unnecessary force when contacting the public. ECF No. 32, ¶¶ 116-117. "Naked assertions devoid of further factual enhancement" are insufficient to state a valid claim. *Iqbal*, 556 U.S. at 662.

### III. Plaintiff fails to allege a state constitutional violation pursuant to C.R.S. § 13-21-131 and Article II of Colorado Constitution.

C.R.S. § 13-21-131 authorizes a private right of action against a peace officer "who, under color of law, subjects or causes to be subjected . . . any other person to the deprivation of any individual rights . . . secured by the bill of rights, Article II of the state constitution." *Woodall v. Godfrey*, 2024 COA 42, ¶ 11 (quoting *Ditirro v. Sando*, 2022 COA 94, ¶ 1). Section 13-21-131 is similar to 42 U.S.C. § 1983 and the Fourth Amendment is almost identical to Article II, Section 7 of the Colorado Constitution. *Id.* (citing *People v. Rister*, 803 P.2d 483, 489 (Colo. 1990)). Thus, given the similarities between Section 13-21-131 and 42 U.S.C. § 1983 and the United States and Colorado constitutions, when determining whether the force used to effect a seizure is reasonable under Article II, section 7 of the Colorado Constitution, courts should apply the objective reasonableness standard articulated in *Graham v. Conor*, 490 U.S. 386 (1989). *Woodall*, at ¶ 18.

As detailed above, Plaintiff has not plausibly plead Defendants' conduct was objectively unreasonable and the Defendants incorporate their "objective reasonableness" argument here. It follows, that Plaintiff's state law excessive force claims necessarily fail for the same reasons.

### CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against the Larimer County Defendants, with prejudice, for Plaintiff's Amended Complaint's failure to state a claim pursuant to Fed. R. Civ. P. 12.

Dated this 9th day of September, 2024.

<div style="margin-left: 3em;">

*s/ David M. Goddard*
David M. Goddard
Bruno, Colin, Goddard & Lowe, P.C.
1120 Lincoln Street, Suite 1606
Denver, CO  80203
Telephone: (303) 831-1099
dgoddard@brunolawyers.com
*Counsel for Moffat County Defendants*

</div>

Case No. 1:24-cv-01664-STV   Document 33   filed 09/09/24   USDC Colorado   pg 17 of 17

## CERTIFICATE OF SERVICE

      I hereby certify that on this 9th day of September, 2024 a true and correct copy of the foregoing **MOFFAT COUNTY DEFENDANTS' MOTION TO DISMISS** was electronically served to the following:

Conor O'Donnell
Igor Raykin
2851 S. Parker Road, Suite 150
Aurora, Colorado 800014
igor@coloradolawteam.com
conor@coloradolawteam.com


Jonathan Eddy
Eric Ziporin
SGR, LLC
3900 East Mexico Ave., Suite 700
Denver, CO 80210
jeddy@sgrllc.com
eziporin@sgrllc.com
Defendants: City of Craig, Colorado, Dalton Caudell, Tracy Mendoza

                                                    *s/ Julie Bozeman*
                                                    Julie Bozeman, Paralegal
                                                    Bruno, Colin, Goddard & Lowe, P.C.

17