IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01664-STV

TANNER SHOLES,

    Plaintiff,

v.

CITY OF CRAIG COLORADO, a municipality; et al.

    Defendants.

---

### CITY OF CRAIG DEFENDANTS' MOTION TO DISMISS

---

Defendants, **CITY OF CRAIG COLORADO**, **DALTON CAUDELL**, and **TRACY MENDOZA** (collectively the "City of Craig Defendants"), through their attorneys, **SGR, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby move the Court for an order dismissing with prejudice all claims asserted against them in Plaintiff's (third amended) Civil Rights Complaint and Jury Demand [ECF No. 32] ("Complaint"), and state as follows:

#### STATEMENT OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a) and the Court's civil practice standards, counsel for the parties have conferred on these matters. Plaintiff is opposed. These defects are not correctable by amendment.

#### I.    INTRODUCTION

This case arises out of a use-of-force incident involving a non-compliant felony suspect who was thought to unlawfully possess a firearm. On September 22, 2023, the City of Craig

Police Department ("CPD") received a report of an individual, later identified as Tanner Sholes ("Plaintiff"), walking though the City of Craig with a rifle. Mr. Sholes is well known to law enforcement due to his extensive criminal history and the fact he has, on multiple occasions, become violent, resisted arrest, and threatened suicide-by-cop. Accordingly, The Moffat County Special Response Team was activated and additional officers/deputies from the CPD and Moffat County Sheriff's Office ("MCSO") responded to his location. After surveilling Plaintiff for over an hour, two MCSO vehicles approached Plaintiff from behind and began issuing loud commands for Plaintiff to surrender. Plaintiff did not comply and kept walking away from the MSCO vehicles, with the rifle still slung over his shoulder. Given his failure to comply, MCSO Lieutenant Nate Businger used his vehicle to knock Plaintiff to the ground. Plaintiff was arrested without incident. The rifle turned out to be a BB gun.

Plaintiff is claiming excessive force against the CPD Defendants for their knowledge of the plan to subdue him, as well as municipal liability against the City of Craig. As demonstrated below, Plaintiff's allegations are conclusory and ultimately refute the plausibility of his claims.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss a complaint "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere formulaic recitations of the elements of a cause of action will not suffice to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    PLAINTIFF'S ALLEGED FACTS[1]

1. On the morning of September 22, 2023, CPD received reports of an individual walking though the City of Craig carrying a rifle. [Complaint, ¶¶ 18–19].

2. CPD Defendant Mendoza responded to the scene, observed Plaintiff with the rifle, and recognized Plaintiff from a prior contact. [Complaint, p. 3].

3. Given Plaintiff's known criminal history, the Moffat County Special Response Team ("SRT") was activated, and additional officers/deputies from the CPD and MCSO responded to his location. [Complaint, p. 4].

4. Officers further confirmed that Plaintiff was prohibited from possessing a weapon due to three existing protection orders. [Complaint, ¶ 25].

5. The officers and deputies observed Plaintiff for over an hour before he eventually exited the city and began walking down a rural road. By this time Plaintiff had walked past roughly 70 residences and was proceeding toward a home at the end of the rural road. [Complaint, ¶¶ 22, 28, 29, 51].

6. MCSO Undersheriff Chip McIntyre then advised those on scene, including MSCO Lieutenant Nate Businger, CPD Defendants Mendoza and Caudell, and others, of the plan to detain Plaintiff.

7. Specifically, Undersheriff McIntire informed Defendants Mendoza and Caudell (and others) that he would give Plaintiff verbal commands over the loudspeaker of his vehicle,

---

[1] Defendants assume these facts for purposes of this motion only, without admission. Defendants deny they violated Plaintiff's civil rights.

3

and "depending on [Plaintiff's] compliance" and "if he failed to comply," Lieutenant Businger would "drive his vehicle into [Plaintiff]" to subdue and disarm him. [Complaint, ¶¶ 56, 67].

8. As Plaintiff continued walking down the dirt road, Undersheriff McIntire identified himself and began giving commands, as planned, for Plaintiff to drop to the ground and surrender. Plaintiff did not comply. [Complaint, ¶¶ 79–81].

9. Undersheriff McIntire then repeated these commands multiple times over approximately 15 seconds. Plaintiff lifted his hands but kept walking away from the officers, with the rifle still slung over his shoulder. [Complaint, ¶ 83].

10. Approximately 20 seconds later, Lieutenant Businger accelerated toward Plaintiff at 20-30MPH. The vehicle impacted Plaintiff, knocking him to the ground. [Complaint, ¶¶ 86–88].

11. Plaintiff was detained without incident and officers discovered the rifle was a BB gun. [Complaint, ¶¶ 89–91].

12. Undersheriff McIntyre's plan, and Lieutenant Businger's use of force decision, were based on the following known circumstances: (1) Plaintiff's "criminal history, including previous incidents where he resisted arrest and/or bore other weapons;" (2) "his unknown mental state;" (3) his "failure to comply" with Undersheriff McIntyre's repeated commands; (4) "the hypothetical chance [he] could force the officers into an altercation where they could be required to use deadly force;" and (5) "prior statements made by [Plaintiff's ex-girlfriend] ... that suggested [he] may attempt suicide-by-cop." [Complaint, ¶¶ 57–59].

## IV.   ARGUMENT

The Complaint asserts three claims for relief against the City of Craig Defendants. These claims are predicated on allegations Undersheriff McIntyre's plan to subdue Plaintiff (and Lieutenant Businger's effectuation of that plan) amounted to excessive force in violation of the Fourth Amendment and Article II Section 7 of the Colorado Constitution, pursuant to 42 U.S.C. § 1983 ("§ 1983") and C.R.S. § 13-21-131 ("ELEIA"), respectively. Plaintiff has also asserted a municipal liability claim against the City of Craig. Defendants address the fatal deficiencies of these claims in turn.

### A.   NO PLAUSIBLE LIABILITY UNDER § 1983.

Defendants Mendoza and Caudell assert qualified immunity as to Plaintiff's § 1983 claim. Accordingly, Plaintiff bears the "heavy two-part burden" of adequately pleading: (1) how each of them violated his constitutional rights, and (2) that such rights (and the violation thereof) were clearly established at the time of the alleged conduct. *See Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). "[I]n this context, plaintiffs must allege facts sufficient to show … that the defendants plausibly violated their constitutional rights." *Robbins*, 519 F.3d at 1249.

#### 1.   No underlying violation.

Because Defendants Mendoza and Caudell were not responsible for formulating or effectuating the apprehension plan, Plaintiff's claims are properly addressed as a "failure to intervene." *See Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022). To maintain such a claim, "a plaintiff must allege 'that 1) a government officer violated his constitutional rights, 2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and 3) the defendant had a realistic opportunity to intervene, but failed to

5

do so.'" *Merrill v. Fell*, 2023 WL 8827665, at *3 (10th Cir. Dec. 21, 2023) (quoting *Bledsoe*, 53 F.4th at 616). Thus, Plaintiff's failure to plausibly allege the apprehension plan and its effectuation violated the Fourth Amendment is fatal to this claim. *Rowell v. Bd. of Cty. Commissioners of Muskogee Cty., Oklahoma*, 978 F.3d 1165, 1175 (10th Cir. 2020).

        a.    <u>No excessive force: The apprehension was objectively reasonable</u>.

A claim of excessive force is examined for objective reasonableness. This standard "evaluates the force used … against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). What constitutes reasonable action may seem quite different to someone facing a possible assailant or assessing a threat in real-time, than to someone analyzing the question at leisure. *Id.* at 396–97. Courts must therefore evaluate "whether the totality of the circumstances justified the use of force, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Est. of Valverde by & through Padilla v. Dodge*, 967 F.3d 1049, 1060 (10th Cir. 2020) (cleaned up). In making this determination, the Court should weigh three primary factors: (1) the severity of the suspected crime; (2) whether the suspect posed an immediate safety threat; and (3) whether the suspect actively resisted or attempted to evade arrest by flight. *Id.* (citing *Graham*, 490 U.S. at 396).[2] The *Graham* analysis is as follows.

---

[2] These factors are referred to herein as the "*Graham* factors."

      *i.*     *Plaintiff's suspected crime was sufficiently severe.*

Plaintiff was suspected of possessing a firearm in violation of a protection order. [Complaint, ¶ 25]. Plaintiff's assertion this was a misdemeanor is incorrect due to his status as a convicted felon. *See* COLO.REV.STAT. § 18-12-108(1) and (2); **Exhibit A** (demonstrating CPD and MSCO previously arrested Plaintiff on numerous occasions and he had been convicted of multiple felonies); **Exhibit B** (showing Plaintiff pleaded guilty to felony eluding prior to the subject incident).[3] Plaintiff's prior eluding conviction rendered his perceived possession of a firearm a suspected felony. COLO.REV.STAT. § 18-12-108(7)(hh). A suspected felony is sufficient to push this factor in Defendants' favor. *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021).

      *ii.*     *Plaintiff posed a sufficient threat.*

In assessing this factor, the Court must consider whether an officer could reasonably conclude he (or others) were in danger when force was used. *See Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020). "A reasonable perception of imminent danger, even if mistaken, may be consistent with the reasonable use of [ ] force." *Est. of Ronquillo by & through Est. of Sanchez v. City & Cty. of Denver*, 720 F. App'x 434, 439 (10th Cir. 2017); *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023) ("[e]ven a mistaken view of the facts does not preclude a

---

[3] The Court may consider **Exhibits A** and **B** (public records) in assessing the plausibility of Plaintiff's claims under Rule 12(b)(6). *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment"); *McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001) (noting that a court may take judicial notice of public records); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

finding that an officer acted reasonably.") (citing *Thomas v. Durastanti*, 607 F.3d 655, 666 (10th Cir. 2010)). "[This *Graham*] factor is generally the most important to determine whether an officer acted reasonably." *Id.*

To the extent the Court views Lieutenant Businger's vehicle strike as deadly force, it must also look to the four sub-factors articulated in *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255 (10th Cir. 2008) to assess the "degree of threat" at the time force was used. These sub-factors include: "(1) whether the officer ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Larsen*, 511 F.3d at 1260.[4] Consistent with *Graham*, these sub-factors must be judged from the perspective of a reasonable officer on scene. *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015).

The Complaint demonstrates Plaintiff was given numerous verbal commands to surrender and that he failed to comply. [Complaint, ¶¶ 79–84].[5] Moreover, the Tenth Circuit "has held the warning does not need to be specifically that officers are about to [use force]." *Palacios*, 61 F.4th at 1259. In terms of distance, because Defendants believed Plaintiff was armed with a gun (not a knife), this sub-factor favors objective reasonableness. *See Est. of Ceballos v. Husk*, 919 F.3d 1204, 1216 (10th Cir. 2019) (acknowledging suspects armed with guns are "capable of harming someone from a much greater distance and with greater lethal potential" than non-ranged weapons). Lastly, with respect to Plaintiff's manifest intentions, the fact he repeatedly disregarded commands, evaded, and maintained possession of the rifle, Defendants could

---

[4] These factors are referred to herein as the "*Larsen* sub-factors."
[5] Plaintiff has not alleged hostile motions.

reasonably conclude he had no intentions of surrendering peacefully. *See Est. of George v. City of Rifle, Colorado*, 85 F.4th 1300, 1319 (10th Cir. 2023) (finding manifestly hostile intentions where armed suspect demonstrated an intent to evade and resist arrest). From this, it would have been reasonable for all Defendants to conclude Plaintiff posed an immediate safety threat, thereby pushing the balance of the *Larsen* sub-factors, and thus the second (and most decisive) *Graham* factor, in their favor.

Additionally, "[b]ecause the *Larsen* factors are non-exclusive, [the Court] must take into account additional [allegations] relevant to whether a reasonable officer in [Defendants'] position would have had probable cause to believe that [Plaintiff] posed a threat of harm..." *Id*. The Complaint indicates the use of force was predicated on Plaintiff's prior instances of resisting arrest and brandishing firearms, his unknown mental state, as well as prior statements suggesting he may attempt suicide-by-cop. [Complaint, ¶¶ 57–59]. These circumstances also favor objective reasonableness. *See Ortiz v. Mora*, 426 F. Supp. 3d 924, 928 (D.N.M. 2019) (an "'analysis of both the moments before [force was used] and the prior interactions between the officer and the subject,' is relevant to the reasonableness assessment." (quoting *Latits v. Phillips*, 878 F.3d 541, 548 (6th Cir. 2017)).

   *iii.* *Plaintiff resisted and evaded arrest.*

"The third *Graham* factor asks whether the individual is actively resisting arrest or attempting to evade arrest by flight." *Est. of George*, 85 F.4th at 1316 (cleaned up). "But resistance need not be physical. [Courts] have found this third factor to weigh in favor of some degree of physical coercion or threat[ ] when an individual refuses to obey an officer's lawful orders." *Andersen v. DelCore*, 79 F.4th 1153, 1165 (10th Cir. 2023) (cleaned up, internal citation

omitted). This is because "[o]fficers must be able to employ force to enforce their lawful orders. Otherwise, an officer's power to give lawful orders would be hollow." *Id.* at 166 (internal quotations omitted). Here, the allegations demonstrate Plaintiff had resisted/evaded arrest by refusing Undersheriff Sheriff McIntyre's repeated orders and continuing to walk away. The totality of the *Graham* factors therefore shows the vehicle strike and related plan were objectively reasonable.

b.      <u>The CPD Defendants lacked a realistic opportunity to intervene</u>.

Plaintiff has not shown how or why the CDP Defendants possessed the authority to override Undersheriff McIntyre's plan, or Lieutenant Businger's ultimate use of force decision. As such, even assuming *arguendo* the vehicle strike was plausibly unreasonable, Plaintiff has failed to plead Defendants had a "realistic opportunity" to intervene. (*Supra*).

**2.      No clearly established law.**

To demonstrate a right is clearly established, a plaintiff must point to Supreme Court or Tenth Circuit precedent (or the clear weight of authority from other circuit courts) recognizing an actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012). "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (emphasis in original). "It is particularly important that a Fourth Amendment right be clearly established *in a specific factual scenario* because it can be difficult for an officer to determine how the prohibition against excessive force will apply in novel situations." *Arnold v. City of Olathe*, 35 F.4th 778, 793 (10th Cir. 2022) (emphasis added).

Here, Plaintiff first relies on the general legal principles outlined in *Arnold (supra)* to overcome qualified immunity. [Complaint, ¶ 17]. Plaintiff's is misguided. *See Cox v. Glanz*, 800 F.3d 1231, 1247 n.8 (10th Cir. 2015). While Plaintiff also relies on *Womack v. Rodriguez*, 2023 WL 2016986 (D. Kan. Feb. 15, 2023) [Complaint, ¶ 17], a district court decision cannot create clearly established law. *Luchetti v. New Mexico State Pers. Bd.*, 2022 WL 2678826, at *4 (10th Cir. July 12, 2022); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). The facts of *Womack* and the cases cited therein are also highly distinguishable from the totality of circumstances facing Defendants—discussed above. Because Plaintiff can point to no binding authority finding an officer liable for failure to intervene under sufficiently similar circumstances, including his violent criminal history, the fact he was believed to be armed, and his repeated failure to comply, the CPD Defendants are entitled to qualified immunity on this alternative basis.

**B.   NO PLAUSIBLE LIABILITY UNDER ELEIA.**

ELEIA allows a private right of action against a peace officer "who, under color of law, subjects or causes to be subjected, [including failing to intervene], any other person to the deprivation of any individual rights ... secured by the bill of rights, article II of the state constitution." *Ditirro v. Sando*, 520 P.3d 1203 (Colo App. 2022) (internal citation omitted). "Given the similarities between [ELEIA] and § 1983—and between the United States and Colorado Constitutions relating to the protection against unreasonable searches and seizures ...— when determining whether the force used to effect a seizure is reasonable under [ELEIA], courts should apply the 'objective reasonableness' standard articulated in *Graham*." *Woodall v. Godfrey*, 2024 COA 42, ¶ 18; *see also Casper v. Vallario*, No. 23CA0840, 2024 WL 3978459, at

\*6 (Colo. App. June 27, 2024) ("In considering whether a plaintiff has alleged a plausible claim for relief under [ELEIA], we find federal case law under 42 U.S.C. § 1983 persuasive.").

Defendants therefore incorporate by reference their "objective reasonableness" and "realistic opportunity" arguments articulated above. Plaintiff's ELEIA claim fails for the same reasons.

### C.  PLAINTIFF FAILS TO STATE A VIABLE *MONELL* CLAIM.

Municipal defendants like the City of Craig are subject to liability under § 1983 only if an underlying constitutional deprivation was the direct result of a municipal policy, practice, or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010). Accordingly, municipal (or "*Monell*") liability requires a preliminary showing of a predicate underlying constitutional deprivation. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Once established, a plaintiff must then identify the policy, practice, or custom alleged to have been the "moving force" behind the deprivation and show how such policy, practice or custom in fact caused the deprivation. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997).

#### 1.  Insufficient allegations of an underlying Fourth Amendment violation.

As demonstrated above, Plaintiff's rights were not violated and his *Monell* claim "necessarily fails." *Est. of George*, 85 F.4th at 1321.

2.     **Insufficient allegations of a violative policy, practice, or custom.**[6]

When a *Monell* claim is based on the municipality's purported failure to act (as is asserted here), a plaintiff must plausibly allege that the "policy" in question "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Thus, to maintain a claim for inadequate hiring or a failure to train/supervise/discipline, a complaint must contain sufficiently specific factual allegations supporting an inference that the entity's operative practices were inadequate. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284–85 (10th Cir. 2019); *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003). A plaintiff must then sufficiently allege the municipality was: (1) "aware that [its] [subject] programs were not being adequately administered," and (2) "[was] nevertheless deliberately indifferent to the risk of constitutional deprivation that would result from these inadequacies." *Havens v. Johnson*, 2012 WL 871195, at *1 (D. Colo. Mar. 13, 2012) (granting motion to dismiss, stating: "Without sufficiently specific factual allegations on these points, [plaintiff's] [ ] claims are deficient and thus are dismissed."); *Waller*, 932 F.3d at 1284–85 (affirming dismissal of similar claims on this basis). The Supreme Court has held that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Waller*, 932 F.3d at 1283–84 (alleged "supervisory shortcomings," such as inadequate

---

[6] To the extent Plaintiff also relies on the final policymaker theory of liability [*see* Complaint, ¶¶ 116, 118] it similarly fails. Frist, Commander Doug Conrad (who is not a Defendant) was not a final policymaker for the City of Craig. *See, e.g.*, *Murphy v. City of Tulsa*, 950 F.3d 641, 646 n.7 (10th Cir. 2019) (noting that "the sergeant was not a final policymaker, so his testimony could not show an official policy."); *Handy v. Diggins*, 2011 WL 7201986, at *4 (D. Colo. Dec. 21, 2011) (noting that "Division Chief" was not a final policymaker for ratification purposes). Second, even if he was, "the decision to [use force against Plaintiff] did not reside with [him] at any one time." *Hollingsworth v. Hill*, 110 F.3d 733, 744 (10th Cir. 1997).

13

hiring or a failure to train/supervise/discipline, implicate the "stringent deliberate indifference standard").

Plaintiff baldly asserts the City of Craig failed to properly hire its officers, and did not train and supervise them with respect to the use of force. Yet the Complaint provides no facts as to how the CPD Defendants were hired or trained, much less who trained them or how/why their training was constitutionally deficient. Plaintiff's assertions are entirely conclusory and do not state a plausible claim. *Sanchez v. City of Littleton*, 491 F. Supp. 3d 904, 921–22 (D. Colo. 2020) (collecting cases and dismissing *Monell* claim on this basis). Nor does the Complaint allege a pattern of prior occurrences sufficient to put the City of Craig on notice that its hiring, training, and supervisory practices needed to be modified. Indeed, Plaintiff references no prior instance where a CPD officer violated the constitution by engaging in similar conduct. *See Est. of Strong v. City of Northglenn, Colorado*, 2018 WL 1640251, at *8 (D. Colo. Apr. 5, 2018) (dismissing *Monell* claim, stating: "[W]hile '[a] pattern of similar constitutional violations ... is ordinarily necessary to demonstrate deliberate indifference ...,' [p]laintiffs have not alleged *any* prior instances of similar conduct, or any other facts which might establish that the municipalities were aware of, but disregarded, a problem in their training programs.") (citing *Connick*, 563 U.S. at 62) (emphasis in original)).

These deficiencies are equally fatal to Plaintiff's pattern, practice, and custom theory. *See, e.g.*, *Johnson v. Pelle*, 2020 WL 6119529, at *11 (D. Colo. Aug. 24, 2020); *Mullins v. City of Colorado Springs*, 575 F. Supp. 3d 1360, 1376 (D. Colo. 2021) (stating in connection with an informal custom theory that the plaintiff "does not allege any other instance of this kind of constitutional violation having occurred at any other time"). Finally, to the extent his claim is

14

premised on a failure to discipline, Plaintiff has similarly failed to allege the existence of any disciplinary shortcomings. Additionally, because any disciplinary decision connected to this event would have necessarily come *after* the incident, Plaintiff has failed to allege how such amounted to the "moving force" behind the alleged failure to intervene. *Waller*, 932 F.3d at 1290 ("a subsequent failure to discipline cannot be the cause of a prior injury"); *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("linear time prevent[s] us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation.").

**WHEREFORE**, for the reasons stated herein, the City of Craig Defendants respectfully request that this Court:

A. Enter an Order dismissing Plaintiff's claims against them, with prejudice;

B. Enter judgment in their favor and against Plaintiff;

C. Award attorney fees and costs against Plaintiff;

D. Provide such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/ Eric M. Ziporin
**Eric M. Ziporin**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Email: eziporin@sgrllc.com

s/ Jonathan N. Eddy
**Jonathan N. Eddy**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Email:  jeddy@sgrllc.com
*Attorneys for City of Craig Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of September, 2024, I electronically served and correct copy of the above and foregoing **CITY OF CRAIG DEFENDANTS' MOTION TO DISMISS** via the following email addresses:

Igor Raykin
Conor O'Donnell
igor@coloradolawteam.com
conor@coloradolawteam.com
*Counsel for Plaintiff*

David M. Goddard
dgoddard@brunolawyers.com
*Counsel for Moffat County Defendants*

/s/ Jonathan Eddy
Attorney for City of Craig Defendants

16