APPEAL,CONMAG,JD1,MJ CIV PP,STAYED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:24–cv–01664–STV</u>

| | |
|---|---|
| Sholes v. City Council of the City of Craig Colorado et al | Date Filed: 06/13/2024 |
| Assigned to: Magistrate Judge Scott T. Varholak | Jury Demand: Plaintiff |
| Cause: 42:1983 Civil Rights Act | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Tanner Sholes**                    represented by     **Conor Michael O'Donnell**
Kishinevsky & Raykin, LLC
2851 South Parker Road
Suite 150
Aurora, CO 80014–2722
720–748–8888
Email: <u>conor@coloradolawteam.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Igor Raykin**
Colorado Law Team
2851 South Parker Road
Suite 150
Aurora, CO 80014
720–748–8888
Email: <u>Igor@coloradolawteam.com</u>
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City Council of the City of Craig**     represented by     **Eric Michael Ziporin**
**Colorado**                                              SGR, LLC
*a municipality*                                          3900 East Mexico Avenue
Suite 700
Denver, CO 80210
303–320–0509
Fax: 303–320–0210
Email: <u>eziporin@sgrllc.com</u>
*ATTORNEY TO BE NOTICED*

**Jonathan N. Eddy**
SGR, LLC
3900 East Mexico Avenue
Suite 700
Denver, CO 80210
303–320–0509

1

Email: jeddy@sgrllc.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Board of County Commissioners for**            represented by    **David M. Goddard**
**Moffat County Colorado**                                         Bruno Colin Goddard & Lowe, PC
*a municipality*                                                   1120 Lincoln Street
*TERMINATED: 08/26/2024*                                           Suite 1606
                                                                   Denver, CO 80203
                                                                   303–831–1099
                                                                   Fax: 303–831–1088
                                                                   Email: dgoddard@brunolawyers.com
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Chip McIntyre**                                represented by    **David M. Goddard**
*an individual*                                                    (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Kurtis Luster**                                represented by    **David M. Goddard**
*an individual*                                                    (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Nate Businger**                                represented by    **David M. Goddard**
*an individual*                                                    (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Brandon Montoya**                              represented by    **David M. Goddard**
*an individual*                                                    (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Matt Hammer**                                  represented by    **David M. Goddard**
*an individual*                                                    (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Dalton Caudell**                               represented by    **Eric Michael Ziporin**
*an individual*                                                    (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Jonathan N. Eddy**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

2

| | | |
|---|---|---|
| **Tracey Mendoza**<br>*an individual* | represented by | **Eric Michael Ziporin**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Jonathan N. Eddy**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Grant Laehr**<br>*an individual*<br>*TERMINATED: 08/26/2024* | represented by | **Eric Michael Ziporin**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Jonathan N. Eddy**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

**KC Hume**
*Official Capacity as Moffat County
Sheriff*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/13/2024 | 1 | COMPLAINT against BOARD OF COUNTY COMMISSIONERS FOR MOFFAT COUNTY COLORADO,, Dalton Caudell, City Council of the city of Craig colorado, Matt Hammer, Grant Laehr, Kurtis Luster, Chip Mcintyre, Tracey Mendoza, Brandon Montoya, Nate businger (Filing fee $ 405,Receipt Number ACODC–9732672)Attorney Igor Raykin added to party Tanner Sholes(pty:pla), filed by Tanner Sholes. (Attachments: # 1 Civil Cover Sheet)(Raykin, Igor) (Entered: 06/13/2024) |
| 06/13/2024 | 2 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES re: 1 Complaint, filed by attorney *Conor Michael O'Donnell, Igor Raykin*.The /s/ signature did not match the filers name on the account for which the login and password are registered. **DO NOT REFILE THE DOCUMENT. Action to take:** Future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Civil cases). (Text Only Entry) (blaws) (Entered: 06/14/2024) |
| 06/13/2024 | 3 | Case assigned to Magistrate Judge Scott T. Varholak. Text Only Entry. (blaws) (Entered: 06/14/2024) |
| 06/13/2024 | 4 | Magistrate Judge consent form issued pursuant to D.C.COLO.LCivR 40.1, direct assignment of civil actions to full time magistrate judges. No summons issued. (blaws) (Entered: 06/14/2024) |
| 06/14/2024 | 5 | ORDER Setting Deadline for Filing Election Concerning Consent/Non–Consent to Magistrate Jurisdiction Form and Setting Scheduling Conference by Magistrate Judge Scott T. Varholak on 6/14/2024. Consent Form due by **7/31/2024**. Joint Proposed Scheduling Order due **8/7/2024**. Scheduling Conference set for **8/14/2024 02:00 PM** in Courtroom A 402 before Magistrate Judge Scott T. Varholak. (schap, ) (Entered: |

| | | |
|---|---|---|
| | | 06/14/2024) |
| 06/21/2024 | 6 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. Dalton Caudell waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/21/2024) |
| 06/21/2024 | 7 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. City Council of the City of Craig Colorado waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/21/2024) |
| 06/21/2024 | 8 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. Grant Laehr waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/21/2024) |
| 06/21/2024 | 9 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. Tracey Mendoza waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/21/2024) |
| 06/26/2024 | 10 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. Board of County Commissioners for Moffat County Colorado waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/26/2024) |
| 06/26/2024 | 11 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. Chip McIntyre waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/26/2024) |
| 06/26/2024 | 12 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. Brandon Montoya waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/26/2024) |
| 06/26/2024 | 13 | NOTICE of Entry of Appearance by David M. Goddard on behalf of Board of County Commissioners for Moffat County Colorado, Nate Businger, Matt Hammer, Kurtis Luster, Chip McIntyre, Brandon MontoyaAttorney David M. Goddard added to party Board of County Commissioners for Moffat County Colorado(pty:dft), Attorney David M. Goddard added to party Nate Businger(pty:dft), Attorney David M. Goddard added to party Matt Hammer(pty:dft), Attorney David M. Goddard added to party Kurtis Luster(pty:dft), Attorney David M. Goddard added to party Chip McIntyre(pty:dft), Attorney David M. Goddard added to party Brandon Montoya(pty:dft) (Goddard, David) (Entered: 06/26/2024) |
| 06/26/2024 | 14 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. Kurtis Luster waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/26/2024) |
| 06/26/2024 | 15 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. Matt Hammer waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/26/2024) |
| 06/26/2024 | 16 | WAIVER OF SERVICE Returned Executed by Tanner Sholes. Nate Businger waiver sent on 6/20/2024, answer due 8/19/2024. (Raykin, Igor) (Entered: 06/26/2024) |
| 07/03/2024 | 17 | NOTICE of Entry of Appearance by Jonathan N. Eddy on behalf of Dalton Caudell, City Council of the City of Craig Colorado, Grant Laehr, Tracey MendozaAttorney Jonathan N. Eddy added to party Dalton Caudell(pty:dft), Attorney Jonathan N. Eddy added to party City Council of the City of Craig Colorado(pty:dft), Attorney Jonathan N. Eddy added to party Grant Laehr(pty:dft), Attorney Jonathan N. Eddy added to party Tracey Mendoza(pty:dft) (Eddy, Jonathan) (Entered: 07/03/2024) |
| 07/03/2024 | 18 | NOTICE of Entry of Appearance by Eric Michael Ziporin on behalf of Dalton Caudell, City Council of the City of Craig Colorado, Grant Laehr, Tracey MendozaAttorney Eric Michael Ziporin added to party Dalton Caudell(pty:dft), Attorney Eric Michael Ziporin added to party City Council of the City of Craig Colorado(pty:dft), Attorney Eric Michael Ziporin added to party Grant Laehr(pty:dft), |

| | | |
|---|---|---|
| | | Attorney Eric Michael Ziporin added to party Tracey Mendoza(pty:dft) (Ziporin, Eric) (Entered: 07/03/2024) |
| 07/31/2024 | 19 | CONSENT to Jurisdiction of Magistrate Judge by Plaintiff Tanner Sholes All parties consent.. (Raykin, Igor) (Entered: 07/31/2024) |
| 08/07/2024 | 20 | Proposed Scheduling Order by Plaintiff Tanner Sholes. (Raykin, Igor) (Entered: 08/07/2024) |
| 08/08/2024 | 21 | ORDER OF REFERENCE. Pursuant to the consent of the parties to the jurisdiction of the magistrate judge 19 , this case is referred to Magistrate Judge Scott T. Varholak for all purposes pursuant to 28 U.S.C. § 636(c), by Chief Judge Philip A. Brimmer on 8/8/2024. Test Only entry (pabsec, ) (Entered: 08/08/2024) |
| 08/14/2024 | 22 | Joint MOTION for Protective Order *Concerning Confidential Information* by Defendants Dalton Caudell, City Council of the City of Craig Colorado, Grant Laehr, Tracey Mendoza. (Attachments: # 1 Exhibit A – Proposed Protective Order)(Eddy, Jonathan) (Entered: 08/14/2024) |
| 08/14/2024 | 23 | ORDER granting 22 Joint Motion for Entry of Protective Order Concerning Confidential Information. The Court will enter the protective order proposed by the parties with modifications to Paragraph 11 to conform to the requirements of the Uniform Civil Practice Standards of the United States Magistrate Judges. SO ORDERED, by Magistrate Judge Scott T. Varholak on 8/14/2024. Text Only Entry(stvlc5, ) (Entered: 08/14/2024) |
| 08/14/2024 | 24 | PROTECTIVE ORDER entered by Magistrate Judge Scott T. Varholak on 8/14/2024. (cpear) (Entered: 08/14/2024) |
| 08/14/2024 | 25 | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Scott T. Varholak: Scheduling Conference held on 8/14/2024. Discovery due by 4/25/2025. Dispositive Motions due by 6/9/2025. Designation of Affirmative Experts due by 1/21/2025. Designation of Rebuttal Experts due by 3/4/2025. Proposed Final Pretrial Order due by 8/13/2025. Final Pretrial Conference set for 8/20/2025 at 9:00 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. FTR: Courtroom A–402. (cpear) (Entered: 08/14/2024) |
| 08/14/2024 | 26 | SCHEDULING ORDER entered by Magistrate Judge Scott T. Varholak on 8/14/2024. (cpear) (Entered: 08/14/2024) |
| 08/15/2024 | 27 | AMENDED COMPLAINT against Board of County Commissioners for Moffat County Colorado, Nate Businger, Dalton Caudell, City Council of the City of Craig Colorado, Matt Hammer, Grant Laehr, Kurtis Luster, Chip McIntyre, Tracey Mendoza, Brandon Montoya, filed by Tanner Sholes.(O'Donnell, Conor) (Entered: 08/15/2024) |
| 08/15/2024 | 28 | NOTICE of Filing Amended Pleading by Plaintiff Tanner Sholes (Attachments: # 1 Exhibit Exhibit 1)(O'Donnell, Conor) (Entered: 08/15/2024) |
| 08/15/2024 | 29 | AMENDED COMPLAINT against Board of County Commissioners for Moffat County Colorado, Nate Businger, Dalton Caudell, City Council of the City of Craig Colorado, Matt Hammer, Grant Laehr, Kurtis Luster, Chip McIntyre, Tracey Mendoza, Brandon Montoya, filed by Tanner Sholes.(O'Donnell, Conor) (Entered: 08/15/2024) |
| 08/15/2024 | 30 | |

| | | NOTICE of Filing Amended Pleading by Plaintiff Tanner Sholes (Attachments: # <u>1</u> Exhibit Exhibit 2)(O'Donnell, Conor) (Entered: 08/15/2024) |
|---|---|---|
| 08/26/2024 | <u>31</u> | NOTICE of Filing Amended Pleading by Plaintiff Tanner Sholes (Attachments: # <u>1</u> Exhibit Exhibit 3)(O'Donnell, Conor) (Entered: 08/26/2024) |
| 08/26/2024 | <u>32</u> | AMENDED COMPLAINT against Board of County Commissioners for Moffat County Colorado, Nate Businger, Dalton Caudell, City Council of the City of Craig Colorado, Matt Hammer, Grant Laehr, Kurtis Luster, Chip McIntyre, Tracey Mendoza, Brandon Montoya, filed by Tanner Sholes.(O'Donnell, Conor) (Entered: 08/26/2024) |
| 09/09/2024 | <u>33</u> | MOTION to Dismiss for Failure to State a Claim by Defendants Board of County Commissioners for Moffat County Colorado, Nate Businger, Matt Hammer, Kurtis Luster, Chip McIntyre, Brandon Montoya. (Attachments: # <u>1</u> Exhibit A)(Goddard, David) (Entered: 09/09/2024) |
| 09/09/2024 | <u>34</u> | MOTION to Dismiss for Failure to State a Claim by Defendants Dalton Caudell, City Council of the City of Craig Colorado, Tracey Mendoza. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B)(Eddy, Jonathan) (Entered: 09/09/2024) |
| 09/13/2024 | <u>35</u> | Joint MOTION to Stay *Discovery* by Defendants Dalton Caudell, City Council of the City of Craig Colorado, Grant Laehr, Tracey Mendoza. (Ziporin, Eric) (Entered: 09/13/2024) |
| 09/13/2024 | 36 | ORDER granting Defendants' <u>35</u> Unopposed Joint Motion to Stay Discovery. Because the Motion is unopposed, proceedings in this case are STAYED until the Court decides Defendants' pending Motions to Dismiss. [## 33, 34] SO ORDERED, by Magistrate Judge Scott T. Varholak on 9/13/2024. Text Only Entry(stvlc5, ) (Entered: 09/13/2024) |
| 09/30/2024 | <u>37</u> | RESPONSE to <u>34</u> MOTION to Dismiss for Failure to State a Claim filed by Plaintiff Tanner Sholes. (O'Donnell, Conor) (Entered: 09/30/2024) |
| 09/30/2024 | <u>38</u> | RESPONSE to <u>33</u> MOTION to Dismiss for Failure to State a Claim filed by Plaintiff Tanner Sholes. (O'Donnell, Conor) (Entered: 09/30/2024) |
| 10/15/2024 | <u>39</u> | REPLY to Response to <u>34</u> MOTION to Dismiss for Failure to State a Claim *CITY OF CRAIG DEFENDANTS REPLY IN SUPPORT OF MOTION TO DISMISS* filed by Defendants Dalton Caudell, City Council of the City of Craig Colorado, Tracey Mendoza. (Eddy, Jonathan) (Entered: 10/15/2024) |
| 10/15/2024 | <u>40</u> | REPLY to Response to <u>33</u> MOTION to Dismiss for Failure to State a Claim filed by Defendants Nate Businger, Matt Hammer, Kurtis Luster, Chip McIntyre, Brandon Montoya. (Goddard, David) (Entered: 10/15/2024) |
| 04/07/2025 | <u>41</u> | ORDER by Magistrate Judge Scott T. Varholak on 4/7/2025. The Motions [##33, 34] are GRANTED IN PART and DENIED IN PART. Specifically, the Motions are GRANTED to the extent that they seek dismissal of Claim Two and Claim Two is DISMISSED WITHOUT PREJUDICE. The Motions are DENIED to the extent that they seek to dismiss Claims One and Three. A Status Conference set for **5/1/2025 03:00 PM** in Courtroom A 402 before Magistrate Judge Scott T. Varholak. (sphil, ) (Entered: 04/07/2025) |
| 04/18/2025 | <u>42</u> | Joint MOTION for Extension of Time to File Answer or Otherwise Respond re <u>32</u> Amended Complaint, by Defendants Chip McIntyre, Kurtis Luster, Nate Businger, |

| | | |
|---|---|---|
| | | Brandon Montoya, Matt Hammer. (Goddard, David) (Entered: 04/18/2025) |
| 04/18/2025 | 43 | ORDER granting 42 Unopposed Joint Motion for Enlargement of Time to Answer Plaintiff's Third Amended Complaint. For good cause shown, Defendants are GRANTED a twenty–one (21) day enlargement to time to submit their respective Answers to Plaintiffs Third Amended Complaint, up to and including Monday, May 12, 2025. SO ORDERED, by Magistrate Judge Scott T. Varholak on 4/18/25. Text Only Entry(stvlc5, ) (Entered: 04/18/2025) |
| 04/30/2025 | 44 | NOTICE OF APPEAL as to 41 Order on Motion to Dismiss for Failure to State a Claim,,, by Defendants Chip McIntyre, Kurtis Luster, Nate Businger, Brandon Montoya, Matt Hammer (Filing fee $ 605, Receipt Number ACODC–10310394) (Goddard, David) (Entered: 04/30/2025) |
| 04/30/2025 | 45 | NOTICE OF INTERLOCUTORY APPEAL as to 41 Order on Motion to Dismiss for Failure to State a Claim,,, by Defendants Tracey Mendoza, Dalton Caudell (Filing fee $ 605, Receipt Number ACODC–10311431) (Eddy, Jonathan) Modified on 5/1/2025 to edit title. (sphil, ). (Entered: 04/30/2025) |
| 04/30/2025 | 46 | MINUTE ORDER: In light of the 45 Notice of Appeal, the Status Conference set for 5/1/25 is VACATED, to be RESET once this Court regains jurisdiction. SO ORDERED by Magistrate Judge Scott T. Varholak on 4/30/25. Text Only Entry (stvlc5, ) (Entered: 04/30/2025) |
| 05/01/2025 | 47 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 45 Notice of Interlocutory Appeal filed by Tracey Mendoza, Dalton Caudell to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Preliminary Record)(sphil, ) (Entered: 05/01/2025) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01664-STV

TANNER SHOLES,

        Plaintiff,

v.

THE CITY OF CRAIG COLORADO,
KC HUME,
CHIP MCINTYRE,
KURTIS LUSTER,
NATE BUSINGER,
BRANDON MONTOYA,
MATT HAMMER,
DALTON CAUDELL, and
TRACEY MENDOZA,

        Defendants.

_____

## ORDER
_____

Chief Magistrate Judge Scott T. Varholak

      This matter comes before the Court on the Moffat County Defendants' Motion to Dismiss (the "Moffat Motion") [#33] and the City of Craig Defendants' Motion to Dismiss (the "Craig Motion") [#34] (collectively, the "Motions"). The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##19, 21]  The Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motions.  For the following reasons, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND[1]

The Complaint asserts several claims arising out of Plaintiff Tanner Sholes' arrest. [*See generally* #32]  According to the operative Complaint, on September 22, 2023, at approximately 7:05 a.m., officers of the Craig Police Department ("CPD") received a phone call from Michelle Tucker notifying the police that a male individual was observed carrying a rifle on foot through the City of Craig.  [*Id*. at ¶ 18]  A short time later, CPD received a second call of a male party with a rifle.  [*Id*. at ¶ 19]  CPD dispatched several officers to locate the man and, at approximately 7:11 a.m., CPD Officer Tracey Mendoza identified Plaintiff as the man with the rifle.  [*Id*. at ¶ 21]  Officer Mendoza specifically observed the barrel of a rifle poking out from beneath Plaintiff's outer shirt.  [*Id*.]

Over the course of the next hour, officers from both the CPD and the Moffat County Sheriff's Office ("MCSO") surveilled Plaintiff as he travelled north through Craig and eventually Moffat County, an open carry county in Colorado.  [*Id*. at ¶ 22]  MCSO officers included Undersheriff Chip McIntyre, Lieutenant Nate Businger, Sergeant Matt Hammer, Investigator Dave Siminoe, and Sergeant Kurtis Luster.  [*Id*.]   CPD officers included Officer Mendoza and Commander Doug Conrad.  [*Id*.]

As Plaintiff continued to walk north along Highway 13, dispatch informed officers that Plaintiff was restrained from possessing a firearm as a result of three protection orders.  [*Id*. at ¶ 25]  Undersheriff McIntyre, Commander Conrad, and Sergeant Hammer each allegedly observed Plaintiff obstructing traffic, though no video footage corroborates

---

[1] The facts are drawn from the allegations in Plaintiff's Third Amended Complaint (the "Complaint") [#32], which the Court accepts as true at this stage of the proceedings. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

2

these allegations.  [*Id*. at ¶¶ 25-27]  As a result of these observations, at approximately 8:15 a.m., Lieutenant McIntyre decided to close Highway 13 to the public.  [*Id*. at ¶ 28]

At approximately 8:30 a.m., Plaintiff turned off Highway 13 onto an adjacent unmarked road (the "Unmarked Road").  [*Id*. at ¶ 29]  At the end of the Unmarked Road was a private residence owned by Curtis Cook.  [*Id*. at ¶ 45]  There are two other homes that share the Unmarked Road.  [*Id*. at ¶ 49]  There are not any markings to suggest that the Unmarked Road was anything other than a public roadway.  [*Id*. at ¶ 46]

Prior to Plaintiff turning onto the Unmarked Road, officers had not sought to contact Plaintiff.  [*Id*. at ¶ 30]  From the time of the initial 911 call until Plaintiff turned onto the Unmarked Road, Plaintiff had traveled more than four miles and had walked past 70 private residences.  [*Id*. at ¶¶ 33-41]  Plaintiff walked past these homes without any incident or any threat of harm.  [*Id*. at ¶ 42]

Nonetheless, once Plaintiff turned onto the Unmarked Road, Undersheriff McIntyre gathered a team of MCSO and CPD officers to contact Plaintiff.  [*Id*. at ¶¶ 54-55]  To this point, Plaintiff had not removed the rifle or made any threatening gestures.  [*Id*. at ¶ 61]  The team included Undersheriff McIntyre, Lieutenant Businger, Sergeant Hammer, Sergeant Luster, MCSO Deputy Brandon Montoya, Officer Mendoza, and CPD Sergeant Dalton Caudell.  [*Id.* at ¶ 54]  Undersheriff McIntyre instructed the officers to gather into two vehicles to pursue Plaintiff.  [*Id*. at ¶ 55]  Undersheriff McIntyre drove one of the vehicles and Lieutenant Businger drove the other.  [*Id*.]  The plan was for Undersheriff McIntyre to issue verbal commands to Plaintiff and for Lieutenant Businger to drive behind Plaintiff, and to drive his vehicle into Plaintiff depending on Plaintiff's compliance with Undersheriff McIntyre's orders.  [*Id*. at ¶ 56]  The decision to potentially hit Plaintiff with

3

Lieutenant Businger's vehicle was based upon the following factors: (1) Plaintiff's criminal history, including incidents where he resisted arrest and/or bore other weapons; (2) Plaintiff's unknown mental state; (3) Plaintiff's failure to comply with Undersheriff McIntyre's orders; (4) the possibility that Plaintiff could force the officers into an altercation whereby they would need to use deadly force; and (5) statements by Plaintiff's former girlfriend suggesting that Plaintiff may attempt suicide-by-cop.  [*Id*. at ¶¶ 57-59]  The officers formulated this plan despite the fact that they had access to a variety of non-lethal tools, including tasers and less-than-lethal ammunition.  [*Id*. at ¶ 64]

As the officers approached Plaintiff in their vehicles, Undersheriff McIntyre commanded Plaintiff to drop to the ground.  [*Id*. at ¶ 80]  At first, Plaintiff did not respond to the command.  [*Id*. at ¶ 81]  Undersheriff McIntyre thus repeated the order a few times over approximately fifteen seconds, eventually identifying the officers as members of the MCSO.  [*Id*. at ¶¶ 81-82]  Plaintiff continued walking but held his arms in the air, showing that his hands were empty.  [*Id*. at ¶ 83]  Approximately twenty seconds later, Lieutenant Businger accelerated his vehicle—an SUV equipped with large metal push bars—toward Plaintiff at the rate of approximately twenty to thirty miles per hour.  [*Id*. at ¶¶ 84-86]  As Plaintiff turned around to face the vehicle, the vehicle struck Plaintiff thereby throwing Plaintiff into the air, eventually landing in a nearby ditch.  [*Id*. at ¶¶ 87-88]  Officers then restrained Plaintiff and discovered that the rifle was, in fact, a BB gun.  [*Id*. at ¶¶ 89-91]

After the incident, Plaintiff was unable to bend his left knee.  [*Id*. at ¶ 95]  Officers called for an ambulance and the ambulance transported Plaintiff to Memorial Regional Hospital ("Memorial").  [*Id*. at ¶¶ 97-99]  Medical personnel at Memorial mistakenly examined Plaintiff's right leg and cleared Plaintiff to be transported back to the jail.  [*Id*. at

4

¶¶ 103-04]  Deputy Montoya heard Plaintiff complain about pain to his left leg, observed that Plaintiff was unable to bend his left leg, and confirmed with Memorial staff that they had not observed Plaintiff's left leg.  [*Id*. at ¶¶ 105, 107, 109]  Nonetheless, officers forced Plaintiff into the transport vehicle, despite his cries of pain, and transported him to the jail where his injuries were left untreated.  [*Id*. at ¶¶ 108-109]  Once Plaintiff was released from jail, he was examined at Poudre Valley Hospital ("PVH") where his injuries were finally diagnosed.  [*Id*. at ¶ 110]  Plaintiff's serious physical injuries included: (1) a complete ACL rupture, (2) a complex tear of the lateral meniscus, (3) a horizontal tear of the medial meniscus, (4) a Grade 1 MCL injury, (5) rotator cuff tendinopathy, and (6) bicep tendinopathy with partial tear.  [*Id*. at ¶ 92]

On June 13, 2024, Plaintiff filed the instant action.  [#1]   The operative Complaint asserts three claims: (1) excessive force in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983 [#32 at ¶¶ 131-143]; (2) failure to hire, investigate, train, supervise, and discipline, pursuant to 42 U.S.C. § 1983 [*id*. at ¶¶ 144-165]; and (3) excessive force in violation of Colo. Rev. Stat. § 13-21-131 and Article II, Section 7 of the Colorado Constitution [*id*. at ¶¶ 166-186].  Defendants filed the Motions on September 9, 2024. [##33, 34]  Plaintiff has responded to the Motions [##37, 38] and Defendants have replied [##39, 40].

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*,

595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The Court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.   ANALYSIS

The Court analyzes the federal claims first (Claims One and Two) and then turns to the state claim (Claim Three).

### A.   Federal Claims

In Claim One Plaintiff seeks relief against all Defendants under 42 U.S.C. § 1983 ("Section 1983") for use of excessive force in violation of the Fourth Amendment.  [#32 at ¶¶ 131-143]  In Claim Two, Plaintiff seeks relief under Section 1983 against Defendant

6

KC Hume, in his official capacity as the Moffat County Sheriff, and against the City of Craig, arguing that a municipal policy or custom directly caused his injury. [*Id*. at ¶¶ 144-165]

The individual Defendants assert that they are entitled to qualified immunity. [##33 at 5-10; 34 at 5-11] Defendants Hume and Craig argue that Plaintiff has failed to plausibly allege a municipal liability claim. [##33 at 11-15; 34 at 12-15] The Court addresses each of Plaintiff's claims in turn.

### 1.    Claim One: Excessive Force

Plaintiff seeks relief under Section 1983 for the alleged use of excessive force by the individual Defendants in violation of Plaintiff's Fourth Amendment rights. [#32 at ¶¶ 131-143] "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The reasonableness of the use of force is evaluated under an 'objective' inquiry that pays 'careful attention to the facts and circumstances of each particular case.'" *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017) (quoting *Graham*, 490 U.S. at 396). In particular, *Graham* identified the following factors the Court should consider: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. "The operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Mendez*, 581 U.S. at 427–28 (quotation omitted). "The 'reasonableness' of a particular use of force must be judged

from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

of hindsight." *Graham*, 490 U.S. at 396.  With these principles in mind, the Court analyzes

Plaintiff's excessive force claims against the individual Defendants.

### a.    Constitutional Violation

The Court first analyzes whether the individual Defendants' conduct violated

Plaintiff's Fourth Amendment rights.

### i.    The First *Graham* Factor

The first *Graham* factor looks to the severity of the crime at issue.  490 U.S. at 396.

Here, Plaintiff was suspected of being a felon in possession of a firearm.  [##32 at ¶¶ 18-

20 (911 calls of male party seen carrying a rifle), 21 (Officer Mendoza observing the barrel

of a rifle poking out from Plaintiff's outer shirt); 33-1 at 9 (showing a felony trespass

conviction), 17 (showing a felony vehicular eluding conviction), 29 (showing a felony

domestic violence, habitual offender conviction), 32 (showing a felony possession of a

weapon by a previous offender conviction), 33 (showing a felony menacing conviction)][2]

This is a felony under both state and federal laws.  18 U.S.C. § 922(g); Colo. Rev. Stat.

§ 18-12-108.  And felon in possession of a firearm is a serious crime.  *Urbina v. Sikes*,

No. MO:18-CV-00100-DC, 2021 WL 11691311, at *4 (W.D. Tex. June 11, 2021);

---

[2] Plaintiff argues that he pled that he was only suspected of a misdemeanor and the Court must accept that fact as true.  [#37 at 16]  But the Complaint references Plaintiff's criminal history as one of the reasons that the officers struck Plaintiff and this allegation is central to the Complaint.  [#32 at ¶ 57.a]  And where a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claims, the defendant may submit an indisputably authentic copy to the Court to be considered on a Motion to dismiss.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  And factual allegations that contradict a properly considered documents are not well-pleaded facts that the Court must accept as true.  *Id.*  As a result, the Court does not accept as true that the officers lacked probable cause to believe Plaintiff had committed a felony offense.

*Hayenga v. Garth*, No. 18-cv-02038-KLM, 2019 WL 2471086, at *5 (D. Colo. June 13, 2019); *Peppar v. City of San Antonio*, No. 5:16-CV-221-DAE, 2019 WL 13537727, at *9 (W.D. Tex. March 19, 2019).  Thus, the first *Graham* factor weighs in favor of Defendants.

### ii.    The Second *Graham* Factor

The second *Graham* factor asks whether the suspect posed an immediate threat to the safety of the officers or others.  490 U.S. at 396.  This factor "is undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer's use of force."  *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017) (quotation omitted).  While courts should consider "whether the officers were in danger at the precise moment that they used force," "[i]t is the totality of the circumstances that is the touchstone of the reasonableness inquiry."  *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1315-18 (10th Cir. 2009) (quotation omitted).  "Indeed, '[s]trict reliance on the "precise moment" factor is inappropriate when the totality must be considered' and a 'reasonable but mistaken belief that the suspect is likely to fight back [will] justif[y] using more force than is actually needed.'"  *Aragon v. Collings*, No. 2:18-cv-00620, 2023 WL 5807307, at *8 (D. Utah June 28, 2023) (quoting *Thomson*, 584 F.3d at 1315-18)*, report and recommendation adopted*, 2023 WL 5217809 (D. Utah Aug. 15, 2023).

Because Lieutenant Businger used deadly force,[3] his use of force is only justified if he had "probable cause to believe that there was a *threat of serious physical harm to [himself]* or to others."  *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)

---

[3] "Deadly force is such force that create[s] a substantial risk of causing death or serious bodily harm."  *Clark v. Bowcutt*, 675 F. App'x 799, 806 (10th Cir. 2017) (emphasis omitted) (quoting *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009)).  The Court concludes, for purposes of this Order, that striking an individual with a vehicle traveling at up to thirty miles per hour constitutes deadly force.

(quotation omitted) (emphasis in original). In assessing the degree of threat facing officers, the Tenth Circuit considers four non-exclusive factors (the "*Larsen* factors"). These include:

> (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect.

*Id*. The Court assesses each factor in turn.

### A.     The First *Larsen* Factor

The first *Larsen* factor asks the Court to consider whether the officers ordered the suspect to drop his weapon and the suspect's compliance with police commands. 511 F.3d at 1260. Here, Plaintiff candidly alleges that Undersheriff McIntyre repeatedly ordered Plaintiff to drop to the ground and Plaintiff repeatedly disobeyed that order. [#32 at ¶¶ 80-83] Thus, the first *Larsen* factor favors Defendants.

### B.     The Second *Larsen* Factor

The second *Larsen* factor asks whether any hostile motions were made with the weapon towards the officers. 511 F.3d at 1260. According to the Complaint, Plaintiff did not make any threatening moves toward the officers and, indeed, put his arms in the air to show that his hands were empty. [#32 at ¶ 83] Thus, as the Moffat County Defendants concede in the Moffat Motion, the second *Larsen* factor favors Plaintiff.[4] [#33 at 8]

---

[4] The Court notes that "simply because a suspect has not yet fired a weapon does not mean that he will not do so in the future, particularly when intentionally keeping his gun with him." *Estate of George v. City of Rifle*, 85 F.4th 130, 1318 (10th Cir. 2023) (quoting *Palacios v. Fortuna*, 61 F.4th 1248, 1259 (10th Cir. 2023)). And the fact that Plaintiff did not drop his weapon may diminish, to some extent, the amount that Plaintiff benefits from the second *Larsen* factor. Nonetheless, because Plaintiff had raised his hands in the air

### C.     The Third *Larsen* Factor

The third *Larsen* factor looks to the distance separating the officers and the suspect.   511 F.3d at 1260.   The Court concludes that this factor favors Plaintiff. Admittedly, at the time the deadly force was employed, Plaintiff and the officers were separated only by the distance between the front of the police vehicle and the driver's seat.   But that short distance was created by Lieutenant Businger accelerating toward Plaintiff, in his vehicle, as Plaintiff was walking away from the officers.   Thus, looking solely at the distance between the Plaintiff and the officers, the Court would find that this third factor weighs against Defendants.  *Cf. Pauly*, 874 F.3d at 1217 (finding that the third *Larsen* factor supported Plaintiff where the officer was fifty feet away and behind a rock wall).

Nonetheless, the Tenth Circuit has recognized that the third *Larsen* factor may need to be modified in a situation where the suspect is armed with a firearm and was physically close to members of the general public.  *Estate of George v. City of Rifle*, 85 F.4th 1300, 1318-19 (10th Cir. 2023).  In *George*, the suspect was armed with a gun but was running away from the officers.  *Id*. at 1318.  The Tenth Circuit acknowledged that "there was not a close-range confrontation" between the suspect and the officers, but "conclude[d] that [it] must modify the physical distance factor to take into account other considerations relevant to th[e] case" including the fact that the suspect was close to the general public and had easy access to locations that would have provided him with cover

---

prior to the use of force, the Court finds that the second *Larsen* factor supports Plaintiff's excessive force claim.

from the officers.  *Id*. at 1318-19.  Thus, the court in *George* found that this third factor weighed in favor of the officers.  *Id*. at 1319.

Here, as in *George*, Plaintiff appeared to be armed with a firearm.  At the time of the use of force, there did not appear to be any members of the general public around, though Plaintiff was walking toward a house where individuals could have resided.  [#32 at ¶¶ 49-50]  The exact distance between Plaintiff and the nearby houses at the time of the use of force is unclear from the Complaint, and thus it is not clear that Plaintiff presented an immediate threat to the homes' residents.  Ultimately, the Court concludes that this third *Larsen* factor weighs in favor of Plaintiff but is cognizant of the fact that Plaintiff appeared to be armed with a firearm and in somewhat close proximity to homes that could have been occupied at the time, thereby diminishing the amount that this third factor supports Plaintiff's excessive force claim.

### D.    The Fourth *Larsen* Factor

The fourth *Larsen* factor looks to the manifest intention of the suspect.  511 F.3d at 1260.  Here, according to the Complaint, Undersheriff McIntyre repeatedly ordered Plaintiff to drop to the ground and Plaintiff repeatedly disobeyed that order and continued walking in the direction of the potentially occupied house.  [#32 at ¶¶ 80-83]  And Plaintiff had a history of violence that Defendants knew about.  [*Id*. at ¶ 57.a; #33-1]  Moreover, the circumstances alleged are just the type of "tense, uncertain, and rapidly evolving situation" in which courts "do not like to second-guess [the officers] using the 20/20 hindsight found in the comfort of a judge's chambers."  *Phillips v. James*, 422 F.3d 1075, 1084 (10th Cir. 2005).  Nonetheless, Plaintiff had not threatened anybody along his multiple mile walk and, while he did not obey Undersheriff McIntyre's orders, he did put

his hands up in the air.  [#32 at ¶ 83]  Thus, while it is a somewhat close call, the Court ultimately concludes that this fourth *Larsen* factor favors Plaintiff.

### E.    Conclusion

After weighing the *Larsen* factors and considering that at the time the force was applied Plaintiff had his hands raised in the air, the Court cannot conclude that Plaintiff posed an immediate and significant threat to the safety of Defendants or anybody else at the time he was struck by the vehicle.  Accordingly, the second *Graham* factor weighs against a finding of reasonableness.

### iii.    The Third *Graham* Factor

The third *Graham* factor asks whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  490 U.S. at 396.  Here, Plaintiff was not actively resisting arrest.  Nor was he fleeing in the traditional sense of the term.  But he continued to walk away from officers in violation of their commands.  Though a close call, the Court finds that this third *Graham* factor weighs slightly in favor of Defendants.  *Axtell v. City of Lakewood*, No. 21-cv-00291-RM-MEH, 2022 WL 227241, at *6 (D. Colo. Jan. 26, 2022) (finding the third *Graham* factor weighed in favor of Defendants where, after the plaintiff was searched, he retreated from the officers), *report and recommendation adopted*, 2023 WL 2553160 (D. Colo. Mar. 17, 2023); *Thompson v. Mericle*, No. 6:21-CV-00358-RAW, 2024 WL 3878413, at *12 (E.D. Okla. Aug. 20, 2024) (finding the third *Graham* factor supported officers where the plaintiff walked away from the officers who were commanding him to lie on the ground); *cf. Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 766 (10th Cir. 2021) (finding a suspect's "180-degree turn and walk[ing] away from the officers" sufficient for "a reasonable officer [to] conclude that, for some reason—including

possibly a nefarious one—[the suspect] was seeking to evade law enforcement"). Thus, the third *Graham* factor weighs slightly in favor of Defendants.

### iv.     Conclusion

In sum, the Court finds that the first and third *Graham* factors support the reasonableness of Defendants' actions. The second and most important *Graham* factor, however, weighs in Plaintiff's favor. In the end, the Court notes that, over the course of approximately one and one half hours, Plaintiff never threatened anybody with the weapon. He did not stop as ordered by the officers, but he did raise his hands. He was walking away as opposed to running. And though he was walking toward a house, the Court cannot tell from the Complaint how far away Plaintiff was from the house or whether the home occupants were in any imminent danger should Plaintiff reach for the rifle, which to that point he had not. Accordingly, accepting as true the facts set forth in the Complaint, the Court concludes that the officers were not justified in using deadly force when Lieutenant Businger struck Plaintiff with the police vehicle.[5]

### b.     Clearly Established

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[5] Defendants Luster, Montoya, Hammer, McIntyre, and Mendoza argue that they cannot be held responsible for Lieutenant Businger's use of force. [##33 at 10; 34 at 10] The Tenth Circuit has made clear that while personal involvement is necessary for Section 1983 liability, "[p]ersonal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quotation omitted). However, "[i]n order to be liable for failure to intervene, [an]

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Id.* at 591 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

---

officer[ ] must have observe[d] or ha[d] reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (quotation omitted). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Vondrak*, 535 F.3d at 1210 (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994)). Here, Undersheriff McIntyre developed the plan to run Plaintiff over if he did not obey the officers' instructions and Defendants Hammer, Luster, Montoya, and Mendoza were all present while the plan was discussed. [#32 at ¶¶ 54-55] Based upon these allegations, a reasonable jury could conclude that any of these officers had the ability to intercede and change the plan.

15

> A clearly established right is one that is sufficiently clear that every
> reasonable official would have understood that what he is doing violates
> that right.  Although plaintiffs can overcome a qualified-immunity defense
> without a favorable case directly on point, existing precedent must have
> placed the statutory or constitutional question beyond debate.  The
> dispositive question is whether the violative nature of the *particular conduct*
> is clearly established. . . .  Qualified immunity protects all but the plainly
> incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted).

The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted).  "[T]he 'specificity' of the rule is especially important in the Fourth Amendment context."  *Id.* (quotation omitted).

At qualified immunity's second step, *Graham* cautions courts to proceed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," taking account of "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." 490 U.S. at 396-97.  And one could argue that the relatively close nature of the *Graham* analysis justifies a grant of qualified immunity to the individual Defendants.  *Wilson v. City of Lafayette*, 510 F. App'x 775, 779 (10th Cir. 2013) ("Looking to the circumstances as a whole, then, the *Graham* factors prove indeterminate at best.  One might argue that, on balance, they favor [the officer].  One might, perhaps with more difficulty, argue they tip in the [plaintiff's] favor.  But however viewed they do not *clearly* indicate [the officer's] conduct was unlawful.").  But in the end, and without knowing exactly how far Plaintiff was from the various homes when he was run over, Plaintiff has plausibly alleged that Lieutenant Businger employed deadly force against Plaintiff while he was simply walking

16

away with his hands in the air, not posing a threat to the officers or anyone else.  And it

has been clearly established in this Circuit that officers may not use deadly force against

an individual who does not pose an immediate threat to the officers or third parties.

*Simpson v. Little*, 16 F.4th 1353, 1366 (10th Cir. 2021).  As a result, Defendants are not

entitled to qualified immunity on Claim One.  *Womack v. Rodriguez*, No. 2:20-cv-02638-

HLT, 2023 WL 2016986, at *7-8 (D. Kan. Feb. 15, 2023) (finding law clearly established

that officers could not run over fleeing suspect, despite suspicion that suspect was armed,

because there were no bystanders in the area, any structures were some distance away,

and the suspect had not made any threats or threatening gestures).

### 2.    Claim Two: Municipal Liability

The Court next considers Plaintiff's Section 1983 claims asserted against

Defendants City of Craig and Sheriff Hume in his official capacity as the Sheriff of Moffat

County.[6]  [#32 at ¶¶ 144-165]  "[M]unicipalities and municipal entities . . . are not liable

under 42 U.S.C. § 1983 solely because their employees inflict injury on a plaintiff."  *Fofana

v. Jefferson Cnty. Sheriff's Off.*, No. 11-cv-00132-BNB, 2011 WL 780965, at *2 (D. Colo.

Feb. 28, 2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694

(1978); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).  Instead, "[t]o hold

a municipality liable under § 1983, a plaintiff must prove (1) the existence of a municipal

policy or custom by which the plaintiff was denied a constitutional right and (2) the policy

or custom was the moving force behind the constitutional deprivation."  *Crittenden v. City*

---

[6] "Suing individual defendants in their official capacities under § 1983 . . . is essentially
another way of pleading an action against the county or municipality they represent," and
thus courts apply the same standards of liability to municipalities as to official capacity
claims against municipal officials.  *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)
(citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).

17

*of Tahlequah*, 786 F. App'x 795, 800 (10th Cir. 2019) (citing *Monell*, 436 U.S. at 694).  A

municipal policy or custom may take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations omitted).

Here, Plaintiff seeks to hold the City of Craig and the County of Moffat liable for the

actions of the individual officers based on their alleged failure to adequately hire,

investigate, train, supervise, or discipline its officers.[7]   [#32 at ¶¶ 145-65]   To state a

*Monell* claim based on the failure to train or supervise, a plaintiff must sufficiently allege

that the failure "results from deliberate indifference to the injuries that may be caused.'"

*Bryson*, 627 F.3d at 788.   However, "[a] municipality's culpability for a deprivation of rights

is at its most tenuous where a claim turns on a failure to train."   *Connick v. Thompson*,

---

[7] Plaintiff argues that Defendants were members of a Special Response Team ("SRT"), activated by Undersheriff McIntyre, and the SRT must have been operating through the use of certain policies and procedures. [##37 at 12-13; 38 at 12-13]  But the Complaint merely alleges that Undersheriff McIntyre set up a team of officers to monitor this particular situation and makes no mention of any policies or procedures beyond the plan to use a vehicle to seize Plaintiff.  [*See generally* #23]  Plaintiff also argues that Undersheriff McIntyre ratified the actions and thus municipal liability exists.  [##37 at 14; 38 at 14]  But Plaintiff does not cite any Section 1983 cases in which municipal liability attached based solely upon an undersheriff's actions [*id.*] and, more importantly, the Complaint clearly alleges municipal liability based solely upon a failure to adequately hire, investigate, train, supervise, or discipline its officers [#32 at ¶¶ 145-65].  And plaintiff may not amend the Complaint "by alleging new facts in [his] response to a motion to dismiss." *In re Qwest Commc'ns Int'l, Inc. Securities Litigation*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004).

18

563 U.S. 51, 61 (2011); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). "Notice of particular deficiencies in a training program is the crux of a failure-to-train theory because '[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Estate of Lobato by & through Montoya v. Correct Care Sols.,* LLC, No. 15–cv–02718–PAB–STV, 2017 WL 1197295, at *7 (D. Colo. Mar. 31, 2017) (quoting *Connick v. Thompson*, 563 U.S. at 62)).

Plaintiff's allegations concerning the municipal Defendants' alleged failure to adequately hire, investigate, train, supervise, or discipline its officers are entirely conclusory. Plaintiff alleges elements of a municipal liability theory without alleging any facts to support those elements. [#32 at ¶¶ 145-65] As a result, Plaintiff has failed to plead a municipal liability claim against either Craig or Moffat County. *See Sodaro v. City & Cnty. of Denver*, 629 F. Supp. 3d 1064, 1082 (D. Colo. 2022) (dismissing *Monell* claim where the plaintiff did "not set forth any facts concerning how the Officers were trained, who they were trained by, or why their training was deficient"); *Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1073 (D. Colo. 2021) (dismissing *Monell* claim where the plaintiff did not allege any facts regarding supervisory deficiencies in the police department, how the defendant's supervision was inadequate, or how this inadequate supervision caused the plaintiff's injury); *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) (dismissing municipal liability claim where the plaintiff had "generally allege[d]" that the individual defendants were not

19

properly trained but had not "allege[d] specific deficiencies in training and supervision, or explain[ed] how the incident described in the Amended Complaint could have been avoided with different or better training and supervision"); *see also Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Accordingly, the Motions are GRANTED to the extent they seek to dismiss Claim Two and Claim Two is DISMISSED WITHOUT PREJUDICE.[8]  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### B.    State Law Claims

Finally, Plaintiff asserts claims against Defendants for excessive force under the Colorado Constitution and Colo. Rev. Stat. §13-21-131 ("Section 13-21-131").  [#32 at ¶¶ 166-186]  The Colorado Constitution provides that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures . . . ." Colo. Const. art. II, § 7.   Colorado's Enhanced Law Enforcement Integrity Act (the "ELEIA") created a cause of action for individuals to seek redress for police conduct that violates constitutional rights under article II of the Colorado Constitution:

> A peace officer, as defined in section 24-31-901(3) who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief.

---

[8] It appears that Claim Two is the only claim brought against Sheriff Hume and the City of Craig and, as a result, these two Defendants are dismissed from this action.

Colo. Rev. Stat. § 13-21-131(1). The ELEIA expressly eliminated statutory immunities, qualified immunity, and the Colorado Governmental Immunity Act ("CGIA"):

> (2)(a) Statutory immunities and statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section. The "Colorado Governmental Immunity Act", article 10 of title 24, does not apply to claims brought pursuant to this section.
>
> (b) Qualified immunity is not a defense to liability pursuant to this section.

Colo. Rev. Stat. § 13-21-131(2). The ELEIA preserved, however, a "good faith and reasonable belief" defense for indemnification purposes. Colo. Rev. Stat. § 13-21-131(4)(a).

Because the Fourth Amendment of the United States Constitution is "almost identical" to article II, section 7 of the Colorado Constitution, Colorado courts generally look to cases analyzing Section 1983 excessive force claims as persuasive authority in resolving claims brought under Section 13-21-13. *Woodall v. Godfrey*, 553 P.3d 249, 256 (Colo. App. 2024); *Casper v. Vallario*, No. 23CA0840, 2024 WL 3978459, at *6 (Colo. App. June 27, 2024), *reh'g denied* (Aug. 15, 2024). "In other words, if a plaintiff's allegations could state a claim for relief under § 1983, that suggests the claim could be supported under section 13-21-131." *Casper*, 2024 WL 3978459, at *6; *see also Woodall*, 553 P.3d at 256 (holding that when determining whether the force used to effect a seizure is reasonable under article II, section 7 of the Colorado Constitution, courts should apply the objective reasonableness standard articulated in *Graham*).

Because of this coextensive nature of the Colorado and United States Constitutions, the Court finds that Plaintiff has plausibly alleged a state constitutional violation. Accordingly, for the same reasons articulated above, the Court DENIES the Motions to the extent that they seek dismissal of Claim Three.

## IV.     CONCLUSION

For the foregoing reasons, the Motions [##33, 34] are **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the Motions are **GRANTED** to the extent that they seek dismissal of Claim Two and Claim Two is **DISMISSED WITHOUT PREJUDICE**.[9]  The Motions are **DENIED** to the extent that they seek to dismiss Claims One and Three.  A status conference is set for May 1, 2025, at 3:00 p.m.

DATED:  April 7, 2025                                    BY THE COURT:


                                                        s/Scott T. Varholak
                                                        Chief United States Magistrate Judge

---

[9] Because it appears that Claim Two is the only claim brought against Sheriff Hume and the City of Craig, these two Defendants are dismissed from this action.

22

IN THE UNITED STATES COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01664-STV

TANNER SHOLES,

       Plaintiff,

v.

THE CITY OF CRAIG COLORADO, a municipality;
KC HUME, in his official capacity as MOFFAT COUNTY SHERIFF;
CHIP MCINTYRE, an individual;
KURTIS LUSTER, an individual;
NATE BUSINGER, an individual;
BRANDON MONTOYA, an individual;
MATT HAMMER, an individual;
DALTON CAUDELL, an individual;
TRACEY MENDOZA, an individual;

       Defendants.

---

## MOFFAT COUNTY DEFENDANTS' NOTICE OF INTERLOCUTORY APPEAL

---

     **NOTICE** is hereby given pursuant to Fed. R. App. P. Rule 4(a)(1)(A) that Defendants Chip McIntyre, Kurtis Luster, Nate Businger, Brandon Montoya, and Matt Hammer (collectively the "Moffat County Defendants") by and through their undersigned counsel of record, hereby take an interlocutory appeal to the United States Court of Appeals for the Tenth Circuit from the Honorable Magistrate Judge Scott T. Varholak's Order on Moffat County Defendants' Motion to Dismiss, entered the 7th day of April, 2025. [ECF 41].

     This appeal is taken for review of the Order's denial of qualified immunity to Moffat County Defendants on Plaintiffs' 42 U.S.C. § 1983 excessive force and all decisions within the

Order inextricably intertwined with or necessary to ensure meaningful review of that denial. *See*,

*Mitchell v. Forsyth*, 472 U.S. 511 (1985).

Respectfully submitted this 30th day of April, 2025.

> *s/David M. Goddard*
> David M. Goddard
> Bruno, Colin, Goddard & Lowe, P.C.
> 1120 Lincoln Street, Suite 1606
> Denver, CO  80203
> Telephone: (303) 831-1099
> dgoddard@brunolawyers.com
> *Counsel for Moffat County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2025 a true and correct copy of the foregoing **MOFFAT COUNTY DEFENDANTS' NOTICE OF INTERLOCUTORY APPEAL** was electronically served to the following:

Conor O'Donnell
Igor Raykin
2851 S. Parker Road, Suite 150
Aurora, Colorado 800014
igor@coloradolawteam.com
conor@coloradolawteam.com
*Counsel for Plaintiff*


Jonathan Eddy
Eric Ziporin
SGR, LLC
3900 East Mexico Ave., Suite 700
Denver, CO 80210
jeddy@sgrllc.com
eziporin@sgrllc.com
Defendants: City of Craig, Colorado, Dalton Caudell, Tracy Mendoza


*s/ Julie Bozeman*
Julie Bozeman, Paralegal
Bruno, Colin, Goddard & Lowe, P.C.

3